UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-cr-150-MOC

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| **QUOVARTIS SPENCER,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss Indictment. (Doc. No. 14). The Government opposes Defendant's motion. (Doc. No. 16). The Court held a hearing on the motion on February 20, 2024.

I. BACKGROUND

On December 27, 2022, Charlotte-Mecklenburg Police Department ("CMPD") Officer Ryan Lack observed a grey Nissan Rogue with an illegally tinted windshield. The vehicle was speeding. Officer Lack made a U-turn to follow the vehicle before initiating his blue lights and siren, which also automatically activated the department-issued body camera affixed to his uniform. The Nissan Rogue sped away, running a stop light at a high rate of speed.

When Officer Lack realized that the vehicle was fleeing, he terminated his pursuit as required by CMPD policy. Officer Lack turned off his lights, siren, and body camera once he determined that he was no longer going to pursue Defendant's vehicle. As Officer Lack was preparing to send a description of the vehicle over the radio, Officer Lack noticed that the vehicle had crashed into a tree a few yards ahead. Defendant was still in the driver's seat.

Officer Lack exited his vehicle and unholstered his department-issued firearm while giving commands to Defendant. Defendant exited the vehicle and began to flee. Officer Lack

1

chased Defendant on foot and instructed Defendant to stop. Defendant ignored Officer Lack's commands. When Officer Lack grabbed Defendant's sweatshirt, Defendant wriggled out of the sweatshirt and continued to flee.

During the chase, Defendant fell to the ground. As Officer Lack looked down, he noticed that his body-worn camera was not recording. Officer Lack's camera was equipped with a device that would automatically activate it upon removal of his firearm from the holster, but that device had malfunctioned. Upon noticing that his camera was not recording, Officer Lack manually activated it during the foot chase. Officers eventually caught up to Defendant and arrested him. When officers retrieved Defendant's sweatshirt from the roadway, they heard the sound of metal on the ground. Officers searched the hoodie and found a Glock model 43, 9mm semi-automatic pistol in the front pocket. Defendant was charged with felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).

## II.     DISCUSSION

Defendant argues that the indictment against him must be dismissed because Officer Lack did not activate his body camera when he began to pursue Defendant on foot. The Court disagrees. The destruction of material, exculpatory evidence violates the due process rights of an accused. Brady v. Maryland, 373 U.S. 83 (1963). Defendant bears the burden of showing that the destroyed or lost evidence is both material and exculpatory. Brady, 373 U.S. 83; Strickler v. Greene, 527 U.S. 263, 291 (1999); United States v. Agurs, 427 U.S. 97, 112–14 (1976). However, if the evidence in question is merely potentially exculpatory, due process is not violated unless the evidence was lost as a result of bad faith. Arizona v. Youngblood, 488 U.S. 51 (1988); Illinois v. Fisher, 540 U.S. 544, 548 (2004); see also California v. Trombetta, 467 U.S. 479, 491 (1984).

Mere negligence does not constitute bad faith. Youngblood, 488 U.S. at 58; United States v. Aguirre-Cuenca, No. 21-4307, 2023 WL 245710, at *3 (4th Cir. Jan. 18, 2023) (unpublished opinion) (assuming without deciding that Youngblood v. Arizona may apply "to the failure to create exculpatory evidence through [the] failure to activate a body camera"). Instead, bad faith is evidenced "when the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." Youngblood, 488 U.S. at 58. When evidence is destroyed absent bad faith, the destruction of evidence, even potentially exculpatory evidence, does not violate the accused's constitutional rights. Id.

Here, Defendant argues that Officer Lack violated department policy by failing to activate his body camera. But even if a policy violation occurred, mere failure to activate body cameras in violation of department policy does not itself establish the bad faith that is essential to a due process violation under Youngblood, 488 U.S. 51. See Aguirre-Cuenca, 2023 WL 245710, at *3; Durr v. Slator, 558 F. Supp. 3d 1, 36 (N.D.N.Y. 2021); United States v. Taylor, 312 F. Supp. 3d 170, 178 (D.D.C. 2018); United States v. Savage, No. cr-21-314, 2021 WL 7186266, at *5 (E.D. Okla. Nov. 19, 2021), report and recommendation adopted, 2022 WL 118408 (E.D. Okla. 2022); United States v. Tillard, No. 18-cr-6091, 2020 WL 57198, at *5 (W.D.N.Y. Jan. 6, 2020).

Defendant claims that Officer Lack's failure to activate his body camera prevented evidence from being created. But Defendant has failed to demonstrate, what, if any, evidence was material and exculpatory. By Defendant's own assertion of the facts, the portion of evidence that was not captured on the recording was Officer Lack's initial observations of Defendant's vehicle and a later foot chase. Defendant has not asserted facts connecting this evidence to his due process rights, nor has he shown that the failure to create such evidence was done in bad

3

faith. Instead, Defendant asks this Court to conclude that the mere failure to create evidence compels dismissal of the indictment against Defendant. In support, Defendant asks this court to follow a district court from another jurisdiction and conclude that the failure to activate body camera deprives this Court from reviewing the best evidence. See United States v. Gibson, 366 F. Supp. 3d 14 (D.D.C. 2018). This Court is not bound by Gibson. In any event, the issue in Gibson was whether an officer ordered the defendant to reveal his waistband or only requested to see it. Id. at 21. The court in Gibson did not hold that the mere failure to activate a body camera automatically requires rejection of an officer's testimony. Id. The court certainly did not conclude, as Defendant suggests, that such a failure warrants the dismissal of an indictment. Id.

Defendant has also not explained how body camera evidence, if it existed, of Officer Lack's initial encounter with Defendant's vehicle could undermine, much less negate, the existence of reasonable suspicion. Officer Lack's reasonable suspicion that Defendant was engaged in criminal activity was based on his observation of speeding and illegal window tint that occurred before the officer decided to conduct a traffic stop. Even if Officer Lack had turned his camera on earlier, it still would have been after his observation of the traffic violations that gave rise to reasonable suspicion. The Court, therefore, declines to dismiss the indictment.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Indictment (Doc. No. 14) is **DENIED**.

Max O. Cogburn Jr
United States District Judge